IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBBIE L. DOWELL, )
    Plaintiff, )
     ) Civil Action No. 3:19-cv-00105
vs. ) Judge Richardson / Frensley
     )
DAVID BERNHARDT, Acting Secretary, )
U.S. Department of the Interior, et al., )
    Defendants. )

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon a Partial Motion to Dismiss filed by Defendant David Bernhardt, Acting Secretary, U.S. Department of the Interior ("Defendant"). Docket No. 35. Along with his Motion, Defendant has contemporaneously filed a supporting Memorandum of Law with Exhibits. Docket Nos. 36, 36-1, 36-2.

In response, Plaintiff has filed her "Objection to Defendant's Second Motion to Dismiss, With Memorandum of Law." Docket No. 40.

Defendant has filed a Reply. Docket No. 44.

Plaintiff filed this pro se action pursuant to 42 U.S.C. § 2000e et seq., Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 12112 et seq., The Americans With Disabilities Act ("ADA"), and "5 U.S.C. § 2302 Prohibited Personnel Practices," alleging that Defendants, beginning in February 2016 and continuing through the filing of her Complaint, failed to accommodate her disability, subjected her to unequal terms and conditions of her employment, retaliated against her, created a hostile work environment, and intentionally inflicted emotional distress upon her. Docket No. 1, pp. 4, 5. Specifically, Plaintiff avers:

> Plaintiff, Debbie L. Dowell, Highway Engineer, GS-0810-12, BIA, Eastern Region, Transportation Department, Nashville, TN was subjected to retaliation, discrimination, hostile work environment and intentional infliction of emotional and physical harm by Marlene Kelley, Regional Supervisory Highway Engineer, and other Regional officials, based on hearing and perceived disability, participation in the EEO process as a witness in two (2) separate formal complaints naming Marlene Kelley, by David Campbell and Roger Markos, and subsequently engaging in her own protected activity, in the following incidents:
>
> 1. Defendant used the Employee Performance Appraisal Plan (EPAP) to alter Plaintiff's job responsibilities
>
> 2. Defendant used the Employee Performance Appraisal Plan (EPAP) to document a lower performance rating than what Plaintiff had rightfully earned
>
> 3. Defendant fostered and maintained an abusive, Hostile Work Environment for employees with EEO activity
>
> 4. Defendant disregarded Plaintiff's approved hearing disability accommodation, which was in place to allow Plaintiff to continue to provide technical assistance via email in lieu of monthly teleconference calls
>
> 5. On December 7, 2017, Supervisor, Marlene Kelley, added 28 contracts to Plaintiff's current workload, but spared Plaintiff's colleague(s) whom had no prior protected activity
>
> 6. Marlene Kelley submitted false allegations in support of her proposal to suspend Plaintiff from her position, resulting in a 7 calendar day suspension without pay for Plaintiff

*Id.* at 5.

Plaintiff avers that she filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 22, 2018, and received her Notice of Right to Sue Letter from them on May 18, 2018. *Id.* Plaintiff filed the instant action on January 30, 2019. *See* Docket No. 1, *passim*. Attached to her Complaint, Plaintiff has submitted a copy of her EEOC Right to Sue Letter dated May 18, 2018; an email dated February 4, 2016; an email

dated December 7, 2017; an email dated March 2, 2016; and one exhibit containing 151 pages of "various emails." Docket Nos. 1-1, 1-2, 1-3, 1-4, and 1-5. Plaintiff seeks:

- In-grade salary increase to GS-12, step 10, for the additional, retaliatory assignment to Katrina Jones' former position, retroactive from December 7, 2017

- Make Plaintiff whole by immediately removing assignment to Katrina Jones' former clients and contracts, and enjoining Defendant from assigning Plaintiff to more than 24 simultaneous contracts at any given time

- Compensatory damages for distress stemming from retaliation, disability discrimination, defamation, and emotional abuse from the Defendant

- Order Agency to permanently allow Plaintiff to work within the limits set forth in the reasonable disability accommodation, which was approved by the Agency on March 7, 2016

- Raise Plaintiff's overall score on the 2017 EPAP from the retaliatory rating of "3" Fully Successful, to the minimally earned rating of "4" "Superior"

- Payment for lost wages stemming from the retaliatory suspension, plus interest

- Telework Permanently, two times per week, to mitigate Plaintiff's exposure to Defendant's abuse
- Remove supervisory authority, and demote Marlene Kelley to the GS-12 grade, for intentionally engaging in prohibited personnel practices

Docket No. 1, p. 6.

Plaintiff additionally seeks:

> Plaintiff requests that the court direct the Defendant to immediately remove the retaliatory workload that Defendant assigned to Plaintiff on December 7, 2017 and enjoin the Defendant from assigning Plaintiff to more than 24 contracts at any given time. Plaintiff also requests that the court direct the Defendant to immediately acknowledge Plaintiff's approved hearing disability accommodation, which allows Plaintiff to

3

> provide technical assistance via email in lieu of monthly teleconference calls and allow Plaintiff to telework two (2) days per week in order to mitigate the severe emotional and physical trauma that Defendant is forcing Plaintiff to endure. Due to Defendant's pattern of abuse, Plaintiff suffers from loss of pay, loss of sleep, migraines, loss of enjoyment of life at work, severe emotional distress, traumatic injury, and constant fear of losing her job and life, due to outrageous and extreme conduct by the Defendant.

*Id.* at 7.

Defendant argues in the instant Motion and supporting materials that his Motion should be granted, pursuant to Fed. R. Civ. P. 12(b)(6) because:

> Plaintiff raises claims over which Defendant asserts were not exhausted and/or timely raised in the administrative process. Plaintiff filed her complaint on January 30, 2019. (D.E. 1).
>
> Defendant would state that any claims of discrimination made by Plaintiff involving factual allegations that took place between February 2016 and October 23, 2017, are not timely raised and those made regarding factual allegations that took place from June 26, 2018, until the time of filing this complaint were not exhausted in the administrative process. Accordingly, Defendant hereby moves to dismiss with prejudice Plaintiff's untimely claims for failure to state a claim.

Docket No. 36.

In support of his Motion, Defendant sets forth the following timeline regarding Plaintiff's two EEOC Charges of Discrimination ("BIA-18-0150" and "BIA-18-0544"):

1. Plaintiff alleges that the discriminatory acts of which she complains began in February; 2016 and continued until the time of filing this instant complaint. (D.E. 1, Page ID#4.)

2. Marlene Kelley ("Kelley") is Plaintiff's first line supervisor. (D.E. 1, Page ID#5.)

3. On December 8, 2017, Plaintiff made contact with an EEO counselor. (The complaint was given identifying number BIA-18-0150. (D.E. 1, Page ID#26; Exhibit I: FAD.)

4. In February 2018 Plaintiff filed a formal complaint (BIA-18-0150) alleging discrimination and hostile work environment based on race, disability, and retaliation for participation in the EEO process. (D.E. 1, Page ID## 5 and 33.)

5. On May 18, 2018, the only accepted claims are those that allegedly occurred on November 3, 2017; December 7, 2017; January 10, 2018; January 19, 2018; and April 25, 2018. (D.E. 1-1, Page ID#18.)

6. On October 25, 2018, Plaintiff filed her second formal administrative complaint (BIA-18-0544). (Exhibit 2: Partial Acceptance Letter.)

7. On January 30, 2019, Plaintiff filed this instant complaint alleging claims occurring from "2016 to present" which also included claims from the second administrative complaint. (D.E. 1.)

8. On February 15, 2019, Plaintiff's claims in BIA-18-0544 were partially accepted. (Exhibit 2: Partial Acceptance Letter.)

9. On March 14, 2019, a Final Agency Decision finding that Plaintiff was not subjected to unlawful employment discrimination was issued on complaint BIA-18-0544. (Exhibit 1: FAD.)

10. No Final Agency Decision has been issued in complaint BIA-18-0544, nor did 180 days pass before the instant complaint was filed. (Exhibit 2: Partial Acceptance Letter.)

11. April 23, 2019, would have been the passage of 180 days after October 25, 2018. (Id.)

*Id.*

As noted, Plaintiff filed her Complaint in this action on January 30, 2019. Docket No. 1.

Defendant argues that Plaintiff's claims based upon allegations that took place between February 2016 and October 23, 2017, and after June 26, 2018, should be dismissed for failure to

5

state a claim for which relief can be granted because Plaintiff's claims based upon allegations that took place between February 2016 and October 23, 2017 are untimely since the first initial contact that Plaintiff made with an EEO counselor was on December 8, 2017, more than the 45 days allowed under 29 CFR § 1614.105(a)(1); and because Plaintiff's claims based upon allegations that took place after June 26, 2018 are premature for failure to completely exhaust her administrative remedies on those claims. Docket No. 36, pp. 5-6.

Defendant contends that a plaintiff's failure to comply with the pre-complaint processing requirements of 29 CFR § 1614.105(a)(1), which mandates that a plaintiff contact an EEO counselor within 45 days of the allegedly discriminatory event, will result in the dismissal of any such claims. *Id.* at 5, *citing* 29 CFR §§ 1614.105(a)(1)(2003), 1614.107(a)(2)(2003). Defendant further argues that the Sixth Circuit has held that dismissals for failure to exhaust administrative remedies in Title VII actions should be analyzed as a failure to sate a claim because exhaustion is a condition precedent rather than a jurisdictional prerequisite. *Id., citing McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002); *Truitt v .County of Wayne*, 148 F.3d 644, 646-47 (6th Cir. 1998); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991).

Plaintiff responds that the instant Motion must be denied as barred pursuant to Fed. R. Civ. P. 12(g)(2) because "Defendant's new frivolous defense of 'Failure to state a claim upon which relief can be granted,' was available to the Defendant but omitted from his earlier 12(b) Motion to Dismiss. Thus, he is prevented from now bringing the defense under a subsequent 12(b) Motion to Dismiss." Docket No. 40, p. 1. Plaintiff also argues that "Defendants' [*sic*] Exhibit 1 Document is Un-authenticated." *Id*. at 2. Plaintiff further responds that her allegations are timely, as she first had contact with the EEO (when she served as a witness) in February 2016. *Id.* at 2-3, 5. Plaintiff additionally responds that she has exhausted her administrative

6
Case 3:19-cv-00105    Document 55    Filed 08/09/19    Page 6 of 18 PageID #: 458

remedies because the "allegations referred to by the Defendant, were encompassed within the EEO administrative proceedings." *Id.* at 5-6. Finally, Plaintiff argues that it is "unlawful" to grant Defendant's request for additional time to file an Answer. *Id.* at 7.

Defendant replies that, contrary to Plaintiff's argument, a failure to state a claim upon which relief can be granted defense can be raised in any pleading allowed. Docket No. 44, p. 1. Defendant replies, therefore, that his Motion is proper "and Plaintiff's objections lack any merit." *Id.* With regard to timeliness, Defendant replies that Plaintiff, in her Response, "sets forth no basis that would justify her claims are timely or that the administrative process has been exhausted." *Id.* Defendant argues that although Plaintiff states that her claims are timely because she first initiated contact with an EEO counselor on February 10, 2016, she fails to note that the exhibits she attached indicate that she made the reported contact as a witness interviewed about the EEO complaints of her colleagues. *Id.* Defendant replies that Plaintiff's participation as a witness in the complaints of her colleagues has absolutely no bearing on Plaintiff's argument that her claims in this action are timely or were administratively exhausted. *Id.* at 2. With regard to the exhibits Plaintiff submitted with her Response, Defendant argues that these exhibits simply do not establish that any of these contacts with an EEO counselor represent a formal complaint or an initial contact regarding a claim of her own. *Id.* Defendant maintains that "Plaintiff's list of dates demonstrates a failure to comprehend the distinction between the pre-complaint process outlined in 29 CFR § 1614.105 and the formal complaint process outlined in 29 CFR § 1614.106 from which the timelines for administrative exhaustion begin to toll." *Id.*

Defendant further replies that, "Plaintiff also fails to mention that, while she did initiate contact with an EEO counselor in 2017, she withdrew her complaint on August 25, 2017 and, though she was sent a Notice of Final Interview informing her of her right to make a formal

complaint regarding those facts, she did not file one." *Id.* With regard to Plaintiff's argument that her claims are administratively exhausted because 180 days have passed since the filing of her formal EEO complaint on April 25, 2018, Defendant replies that Plaintiff is correct in that assertion with regard to the claims encompassed by BIA-18-0150. *Id.* Defendant contends that the same is not true, however, for the claims encompassed by BIA-18-0544. *Id.* Defendant notes that it was Plaintiff who, on August 10, 2018, asked the EEO to separate these two complaints and she participated in informal counseling regarding the new allegations identified as BIA-18-0544. *Id.* at 2-3. Defendant further notes that Plaintiff did not file a formal complaint regarding those allegations until October 25, 2018. *Id.* at 3. Defendant argues that Plaintiff's EEO complaint included specific factual allegations limited by a period of time that Plaintiff seeks to exceed in her District Court filing such that Plaintiff cannot apply the claims raised in EEO complaint BIA-18-0544 to EEO complaint BIA-18-0150. *Id.* Defendant asserts that Plaintiff's contention that simply alleging discrimination, retaliation, and hostile work environment in one EEO complaint is sufficient to meet the expected scope of investigation test for all allegations included in her pleadings in District Court "fundamentally misunderstands" the distinction between requesting the scope of past allegations of discrimination be expanded and requesting that claims of discrimination made later in time on the basis of new facts be included. *Id.*

As to the "additional facts" section Plaintiff includes in her Response, Defendant replies that those "facts" are in no way responsive to the instant Motion and, instead, are excerpts from her most recent EEO claim, which have yet to be administratively exhausted and which Defendant denies and asserts are without merit. *Id.* at 4. Finally, with regard to Plaintiff's authentication argument, Defendant replies that the Final Agency Decision and the partial

8

acceptance letter are both self-authenticating pursuant to the Federal Rules of Evidence because both documents bear the seal of the United States Department of Interior and are signed by either a Director or an Acting Director. *Id.*

For the reasons set forth below, the undersigned recommends that Defendant's Partial Motion to Dismiss (Docket No. 35) be GRANTED.

## II.  Law and Analysis

### A.  Fed. R. Civ. P. 12(b)(6) - Motions to Dismiss

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.*

The court will construe the complaint in the light most favorable to the nonmoving party, accept its allegations as true, and draw all reasonable inferences in favor of the nonmoving party. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require only that the pleadings contain "a short and plain statement of the claim" that will provide fair notice of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8; *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative

level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has addressed the current appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

**B. 42 U.S.C. §2000e et seq. - Title VII of the Civil Rights Act of 1964**

    **1. Generally**

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

> It shall be an unlawful employment practice for an employer--
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national

>origin; or
>
>(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence which would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him or her because of his or her protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F.3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to first establish a prima facie case of discrimination. If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate,

nondiscriminatory reason for the employee's rejection. If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. *Id.* "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

### 2. Race and/or Gender Discrimination

A prima facie claim of race or gender discrimination under Title VII requires a plaintiff to establish the following:

1. he or she is a member of a protected class;

2. he or she was qualified for the job and performed it satisfactorily;

3. despite his or her qualifications and performance, he or she suffered an adverse employment action;[1] and

4. he or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside the protected class.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2000). *See also Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000). (Footnote added.)

### 3. Retaliation

---

[1]An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885-86 (6th Cir. 1996).

An employer may not retaliate against an employee because he or she has opposed an unlawful employment practice, or because he or she has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing. 42 U.S.C. § 2000e-3(a).

A prima facie case of retaliation requires a plaintiff to demonstrate that:

1. he or she engaged in a protected activity;

2. the employer knew that he or she was exercising the protected rights;

3. he or she suffered an adverse employment action or was subjected to severe or pervasive retaliatory harassment by a supervisor; and

4. there was a causal connection between the protected activity and the adverse employment action or harassment.

*Little v. BP Exploration and Oil Co.,* 265 F.3d 357, 363 (6th Cir. 2001); *Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Retaliation claims are likewise evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 862 (6th Cir. 1997).

### 4.  Hostile Work Environment

In order to establish that a plaintiff was subjected to a hostile work environment, he or she must demonstrate, *inter alia*, that the employer's conduct was "sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). In analyzing this issue, courts should consider "the frequency or the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

13

unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993).

## C.  42 U.S.C. § 12112 - The Americans With Disabilities Act

The Americans With Disability Act ("ADA") protects employees from discrimination based on their disabilities, and provides, in part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112.

In order to sustain an ADA claim, an employee must first make out a prima facie case of discrimination by establishing that:

1. he or she is an individual with a disability;

2. he or she is otherwise qualified for the position, with or without reasonable accommodation;

3. he or she suffered an adverse employment decision;

4. the employer knew or had reason to know of the plaintiff's disability; and

5. the position remained open while the employer sought other applicants or the disabled individual was replaced.

*Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996). *See also* 42 U.S.C. §§ 12111 and 12112.

Claims brought under the ADA are also evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above.

**D. The Case at Bar**

    **1. Procedural Requirements**

As an initial matter, federal employees who allege discrimination must first exhaust their administrative remedies before filing suit in federal court. *See, e.g., Truitt v. County of Wayne*, 148 F.3d 644, 646-47 (6th Cir. 1998); *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir. 1991). In order for a federal employee to file an employment discrimination claim, the federal employee must first contact an EEO counselor within 45 days of the allegedly discriminatory action or personnel matter. 29 CFR §§ 1614.105-110; 42 U.S.C. § 2000e-16(c). If the federal employee is unhappy with the help of the counselor, within the proscribed time limits, the federal employee may then file a formal complaint with the agency. 29 CFR § 1614.106. Once a formal complaint is received by the agency, the agency then has a duty to investigate the complaint, to provide a hearing on the complaint if requested, and to fulfil all additional requisite administrative requirements. 29 CFR §§ 1614.105-110. Once the agency has taken final action on the complaint, then the federal employee can appeal the decision to the EEOC (29 CFR § 1614.110) or can file a civil action in federal district court within 90 days (42 U.S.C. § 2000e-16(c); 29 CFR § 1614.407).

    **2. BIA-18-0150**

On December 8, 2017, Plaintiff first contacted an EEO counselor with complaints that would be designated BIA-18-0150. Docket No. 1, p. 26; Docket No. 36-1. Plaintiff filed her first formal complaint (BIA-18-0150) on February 22, 2018, alleging discrimination and hostile work environment based on race, disability, and retaliation for participation in the EEO process. Docket No. 1, p. 5. Plaintiff received her Notice of Right to Sue letter regarding complaint BIA-18-0150 on May 18, 2018. *Id. See also*, Docket No. 1-1; 36-1. In that letter, Plaintiff's only

claims accepted for investigation were those that were averred to occur on November 3, 2017; December 7, 2017; January 10, 2018; and April 25, 2018. *Id.* On March 14, 2019, a Final Agency Decision was issued finding that Plaintiff was not subjected to unlawful employment discrimination on claims contained in BIA-18-0150. Docket No. 36-1. Plaintiff filed her Complaint in this action on January 30, 2019, alleging claims occurring from "2016 to present." Docket No. 1.

### 3. BIA-18-0544

Plaintiff later filed her second formal complaint (BIA-18-0544) on October 25, 2018. *See* Docket No. 36-2. On February 15, 2019, Plaintiff's claims were partially accepted. *Id.* Specifically, the EEOC accepted for investigation Plaintiff's claims spanning August 10, 2018 through October 24, 2018. *Id.* As of the date of Plaintiff's filing of the instant action, no final Agency Decision has been issued with regard to BIA-18-0544. Docket No. 36.

### 4. Analysis

Although Plaintiff contends that her claims are timely because she first made contact with an EEO counselor in 2016 (when she was a witness in the EEO charges of two co-workers), Plaintiff has misunderstood the "first contact" requirements. The "first contact" required under the Regulations pertains to the "first contact" a federal employee makes to the EEO counselor within 45 days of his or her specific allegedly discriminatory action or personnel matter. 29 CFR §§ 1614.105-110; 42 U.S.C. § 2000e-16(c). Accordingly, the relevant "first contact" date with regard to complaint BIA-18-0150 is December 8, 2017, the date Plaintiff first made contact with an EEO counselor regarding the allegedly discriminatory conduct and actions at issue. *See* Docket No. 1, p. 26; Docket No. 36-1. Because a federal employee must make first contact with an EEO counselor within 45 days of the allegedly discriminatory action or personnel matter,

16

allegations that are averred to have occurred before October 24, 2017 are untimely and should be dismissed.

With regard to the actions of which Plaintiff complains in BIA-18-0544, while Plaintiff timely contacted an EEO counselor with regard to the claims contained in BIA-18-0544, as of January 30, 2019, the filing date of the instant action, no Final Agency Decision has been issued with regard to BIA-18-0544. *See record, passim.* Absent either a Final Agency Decision or the passage of 180 days after the filing of the October 25, 2018 filing [2] of Plaintiff's formal complaint in BIA-18-0544, Plaintiff's administrative remedies have not been exhausted. Because Plaintiff has not exhausted her administrative remedies with regard to the claims in BIA-18-0544, claims dated after June 26, 2018 are premature and should be dismissed.

### III. Conclusion

For the foregoing reasons, the undersigned recommends that Defendant's Partial Motion to Dismiss (Docket No. 35) be GRANTED. Specifically, the undersigned recommends that Plaintiff's claims dated before October 24, 2017 and after June 26, 2018 be dismissed as untimely. Plaintiff's claims for actions occurring between October 24, 2017 and June 26, 2018, however, should be allowed to proceed at this juncture.

With regard to Defendant's request to "be allowed thirty (30) days in which to file an answer to any remaining causes upon this Court's ruling, "the undersigned recommends that Defendant be GRANTED the requested 30 days from the date of the filing of the District Judge's

---

[2] 180 days after October 25, 2018 would have been April 23. 2019; as noted, Plaintiff filed her Complaint in this action on January 30, 2019.

Order ruling on the instant Report and Recommendation in which to file an Answer to any remaining claims.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**